# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LYLE HERRINGTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:21-cv-00761-SEP |
| LOUIS DEJOY, Postmaster General of the United States, | ) ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

Mr. Herrington filed an EEO Complaint against the Postal Service on November 12, 2019 which was docketed at EEO case number 4J-630-0168-19 (EEO No. 168-19). In EEO No. 168-19, Mr. Herrington indicated that the Postal Service conducted a pre-disciplinary interview (PDI) on July 3, 2019 and issued a Letter of Warning on July 15, 2019 over a photo-taking incident with a colleague and claimed that the PDI and Letter of Warning were retaliation for a prior EEO against his supervisor Melvin Beck (Beck) that he filed in February 2019 docketed at EEO number 4J-630-0059-19 (EEO No. 59-19). Defendant moves for summary judgment in Plaintiff Lyle Herrington's case for two reasons. First, Mr. Herrington raises a number of new allegations in his Complaint before the Court at Count I and Count II which were not administratively exhausted. Specifically, in Count I he now alleges a hostile work environment and disparate treatment claim in EEO No. 168-19 that he never raised before the Postal Service. In Count II, he brings a substantive claim on the merits over his February 2019 EEO (EEO No. 59-19) that he also never raised before the Postal Service. As such, his claims in Count I and Count II are not before this Court; instead, the only claim for consideration is his allegation in EEO No. 168-19 that the July 2019 PDI and Letter of Warning were retaliation for

Mr. Herrington's prior February 2019 EEO (EEO No. 59-19), a statutorily-protected activity. Second, summary judgment is proper over the retaliation claim in EEO No. 168-19 regarding the July 2019 PDI and Letter of Warning because (1) the Postal Service's PDI process is not an adverse employment action as a matter of law for retaliation purposes, (2) Mr. Herrington cannot show a causal nexus between his February 2019 EEO (EEO No. 59-19) and the July 2019 PDI and Letter of Warning; and (3) Mr. Herrington suffered no material harm from the July 2019 PDI and Letter of Warning.

### STATEMENT OF FACTS

A separate Statement of Material Facts (SOF) accompanies this Memorandum of Law as required by Local Rule 7-4.01(E).

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, shows there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed.R.Civ.P. 56(c). In determining summary judgment, the Court views the facts and inferences in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The movant has the burden to show both the absence of a genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996). Once the movant meets this burden, the non-movant must rely on affidavits or other evidence showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256. Only disputed facts that affect the outcome can preclude summary judgment. *See Anderson,* 477 U.S. at 248 (1986); *see also Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004).

# **ARGUMENT**

**I.     COUNTS I AND COUNTS II IN MR. HERRINGTON'S COMPLAINT BEFORE THE COURT WERE NOT PROPERLY EXHAUSTED AT THE ADMINISTRATIVE LEVEL.**

Mr. Herrington raised two counts in his Complaint before the Court: Count I, a hostile work environment and disparate treatment claim on account of race based on his July 2019 pre-disciplinary interview and Letter of Warning, SOF at ¶ 60[1]; and Count II, a substantive retaliation claim on the merits of his prior February 2019 EEO (EEO No. 59-19) against his supervisor, Mr. Beck, for race-based discrimination, SOF at ¶ 62.  As a part of his Complaint, Mr. Herrington also raised a number of allegations common to both Count I and Count II, including that he was disciplined or threatened with discipline on numerous occasions[2]; that he was repeatedly subjected to co-workers routinely using the N-word every day, multiple times a day; and that he was subjected to a steady barrage of racially derogatory comments.[3]  SOF at ¶ 63.  Neither of these counts in Mr. Herrington's Complaint – as well as the common allegations he now raises –  are properly before this Court because he failed to exhaust them in his formal EEO Complaint at EEO No. 168-19 that he filed on November 12, 2019, the only formal EEO Complaint that is properly before this Court.

**A.     STANDARD FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES.**

It is well-settled that administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer. *See Bailey v. United States Postal Serv.,* 208 F.3d 652, 654 (8th Cir.2000); *McAlister v. Secretary of Dept. of Health and Human Services,* 900 F.2d 157, 158 (8th Cir.1990); *see also Morgan v. United States Postal Service,* 798 F.2d 1162,

---

[1]     In Count I, Mr. Herrington also alleged an incident where he was falsely accused of trying to run down a co-worker in the post office parking lot.  SOF at ¶ 61.  During his deposition, he indicated that this claim involved colleague Kiesha Wiley (Wiley) who accused him on June 18, 2020 of trying to hit her with his postal truck in the parking lot.  SOF at ¶ 61 n. 14.

[2]     Mr. Herrington describes a road rage incident that he had on July 25, 2019 after which one of his supervisor, Ms. Nikki Johnson (N. Johnson), accused him of unbecoming conduct.  SOF at ¶ 63 n. 15.

[3]     Mr. Herrington testified that Ralph Jackson called him the "Ku Klux Klan" repeatedly and that Mr. Beck did nothing.  SOF at ¶ 63 n. 16.

1164-65 (8th Cir.1986) (postal service employee was required to exhaust Rehabilitation Act claim alleging disability discrimination against the Postal Service). A party's failure to exhaust his administrative remedies is fatal to his claims employment claims. *McAlister*, 900 F.2d at 158.

A plaintiff will be deemed to have exhausted his administrative remedies for all allegations contained in his complaint that are "like or reasonably related to the substance of charges timely brought before the EEOC." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *see also Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852-53 (8th Cir. 2012). For purposes of this requirement, a court may liberally construe an administrative charge; however, the scope of the plaintiff's civil suit may only be "as broad as the [administrative] investigation which could reasonably be expected to grow out of the charge of discrimination." *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671-72 (8th Cir. 1994) (quotation omitted). In this regard, the Eighth Circuit is clear that there is a difference between a lack of specificity about a charge and the complete lack of any charge and, as such, the court cannot invent a claim *ex nihilo*. *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). The reason for this requirement is to "provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005).

**B.   MR. HERRINGTON ONLY EXHAUSTED HIS RETALIATION CLAIM IN EEO NO. 168-19 CONCERNING THE JULY 2019 PDI AND LETTER OF WARNING.**

To be clear, Mr. Herrington does have one retaliation claim before this Court – that claim found in EEO No. 168-19 filed on November 12, 2019 based on the July 2019 PDI and Letter of Warning. SOF at ¶¶ 15, 17, 20. Defendant does not dispute that this retaliation claim articulated in EEO No. 168-19 was properly exhausted. However, the other claims that Mr. Herrington has raised in his Complaint before the Court at Counts I (hostile work environment and disparate treatment on account of race) and Counts II (race-based retaliation by Mr. Beck in February 2019) were not properly

4

exhausted in EEO No. 168-19. As such, these new claims are not before this Court and the Court can grant summary judgment in Defendant's favor.

### 1. MR. HERRINGTON'S SUBMISSIONS IN EEO NO. 168-19 SHOW HE WAS ONLY CHALLENGING THE JULY 2019 PDI AND LETTER OF WARNING.

Mr. Herrington initiated his formal Complaint in EEO No. 168-19 on August 7, 2019, when he went online and completed a series of EEO Contact Summaries about his claim. SOF at ¶ 7. In this regard, Mr. Herrington filed four EEO Contact Summaries between August 7, 2019 and August 14, 2019. SOF at ¶¶ 8, 10-12. None of these EEO Contact Summaries, however, said anything about a hostile work environment, disparate treatment on account of race, that Mr. Beck engaged in race-based retaliation in February 2019, that Mr. Herrington was repeatedly subjected to the N-word, that he was wrongfully accused of trying to rundown Ms. Wiley, that Ms. N. Johnson accused him on unbecoming conduct after a road rage incident and that Mr. Herrington was called the Ku Klux Klan. Instead, in his first EEO Contact Summary on August 7, 2019, Mr. Herrington listed Mr. Beck as the responsible management official (RMO), specifically noted that he received a Letter of Warning on July 15, 2019 as a form of disciplinary action and described the summary of the issue as follows:

> Mr. Beck gave me a letter of warning for taking a picture of a suspicious postal vehicle on my route. The vehicle then pulled up to me and took my picture of me personally. Mr. Beck issued a LOW [Letter of Warning] to me but didn't issue any to the other individual. This person was black and Mr. Beck is claiming that I'm harassing her. Mr. Beck did nothing to the other person. This is in reprisal to a past EEO that was filed on 02/06/2019, case number PRE-013481-2019.

SOF at ¶ 8. Mr. Herrington's subsequent EEO Contact Summaries were equally clear that he was bringing a claim regarding the July 2019 PDI and Letter of Warning. His second EEO Contact Summary on August 14, 2019 named station manager Shelly Bailey (Bailey) as RMO, again noted the Letter of Warning on July 15, 2019 as a form of disciplinary action and accused Ms. Bailey of defending Mr. Beck. SOF at ¶ 10. A few hours later that same day, Mr. Herrington filed a third EEO Contact Summary which now named supervisor Nikki Johnson (N. Johnson) as the RMO, again noted the

5

Letter of Warning on July 15, 2019 as a form of disciplinary action and claimed that Ms. N. Johnson coached Mr. Beck during the PDI. SOF at ¶ 11. Finally, Mr. Herrington submitted a fourth EEO Contact Summary a few hours later on August 14, 2019 in which he named Russel Thouvenot (Thouvenot ) as the RMO, again noted the disciplinary action/warning and accused Thouvenot of failing to assist him with the disciplinary action he received. SOF at ¶ 12, 12 n. 5.

The Postal Service acknowledged these allegations and was under the impression that Mr. Herrington was bringing a claim on account of the July 2019 PDI and Letter of Warning. Specifically, on August 16, 2019, it sent him a letter in which it acknowledged the receipt of his EEO Contact Summary, noting that the additional allegations the Postal Service received on August 15, 2019 would be consolidated with his open EEO claim at EEO No. 168-19. SOF at ¶ 13. In this regard, the Postal Service underscored that Mr. Herrington's allegations were focused on the Letter of Warning dated July 15, 2019 (going so far as to bold the date in the original letter) and his claim that Ms. Bailey assisted Mr. Beck in his behavior on that date. *Id.* The Postal Service's August 16th letter, however, raised nothing comparable to the allegations that Mr. Herrington now raises in Count I and Count II of his Complaint before the Court. *Id.* In other words, the Postal Service was acknowledging the express claims that Mr. Herrington had raised through the EEO Contact Summary Process – to wit, only the July 2019 PDI and Letter of Warning.

Further, Mr. Herrington's formal EEO Complaint that he filed on November 12, 2019 at EEO No. 168-19 solidified that he was only bringing a retaliation claim for the July 2019 PDI and Letter of Warning based on his prior February 2019 EEO (EEO No. 59-19), a statutorily-protected act. Notably, Mr. Herrington's formal Complaint in EEO No. 168-19 says nothing about a hostile work environment, disparate treatment on account of his race, that Mr. Beck engaged in race-based retaliation in February 2019, that Mr. Herrington was repeatedly subjected to the N-word, that he was wrongfully accused of trying to rundown Ms. Wiley, that Ms. N. Johnson accused him on unbecoming

6

conduct after a road rage incident and that he was called the Ku Klux Klan. Instead, Mr. Herrington was clear that he was only bringing a retaliation claim. In this regard, Box 14 in the formal EEO Complaint asks the complainant to identify the bases for his claim and Mr. Herrington only checked the box indicating "Retaliation (Specify Prior EEO Activity)." SOF at ¶ 17. Mr. Herrington left the other boxes blank. *Id.* He admits that he completed this form on his own, SOF at ¶ 15; he also admits that he only checked the retaliation box in Box 14 and that the other boxes in Box 14 were left blank. SOF at ¶ 18. While Mr. Herrington did not indicate his specific protected activity after the colon found at the retaliation entry in Box 14, his attached handwritten statement that he provided in response to Box 16, which seeks a description of the alleged discriminatory conduct, was clear that he was bringing his retaliation claim in EEO No. 168-19 based on the prior February 2019 EEO that he brought against Mr. Beck. SOF at ¶ 17. Mr. Herrington further admitted in his deposition that the statutorily-protected activity for his retaliation claim in EEO No. 168-19 regarding the 2019 PDI and Letter of Warning was the prior February 2019 claim (EEO No. 59-19). *Id.*

Finally, Mr. Herrington's handwritten statement attached to his formal EEO Complaint in EEO No. 168-19 says nothing about a hostile work environment, disparate treatment on account of his race, that Mr. Beck engaged in race-based retaliation in February 2019, that Mr. Herrington was repeatedly subjected to the N-word, that he was wrongfully accused of trying to rundown Ms. Wiley, that Ms. N. Johnson accused him on unbecoming conduct after a road rage incident and that he was called the Ku Klux Klan. Instead, Mr. Herrington clearly brought a claim over the July 2019 PDI, where in that handwritten statement, he described the PDI he received after taking a picture of a co-worker and raised specific allegations about Mr. Beck from that PDI process. SOF at ¶ 20.

Thereafter, on December 9, 2019, the Postal Service sent Mr. Herrington an Acceptance for Investigation in EEO No. 168-19, in which it acknowledged the receipt of EEO No. 168-19 and specifically described the scope of investigation as follows: "<u>Specific Issue Alleged</u>: You alleged

7

discrimination based on Retaliation (Prior EEO Activity) when: On July 15, 2019, you were issued a Letter of Warning (LOW)." SOF at ¶ 21. In other words, as it had done with the EEO Contact Summary, the Postal Service opened an investigation for a retaliation claim predicated on Mr. Herrington's own written submissions – to wit, the July 2019 PDI and its subsequent Letter of Warning and nothing else. Mr. Herrington, in fact, was afforded the opportunity to challenge the scope of this investigation. In its December 9th letter, the Postal Service noted that he could provide a written response articulating his disagreement with the accepted issue defined therein. SOF at ¶ 22. Mr. Herrington admits, however, that he did not provide any response to the specific issue that the Postal Service alleged in the December 9th Acceptance for Investigation. SOF at ¶ 23. Simply put, the Postal Service had no way of knowing – based on Mr. Herrington's submissions in the EEO Contact Summaries, his formal EEO Complaint and his handwritten statement in EEO No. 168-19, as well as his admitted silence to the accepted issue for investigation in EEO No. 168-19 – that he had a hostile work environment or disparate treatment claim or that he was challenging his prior February 2019 EEO (EEO No. 59-19) on the merits when he filed his formal EEO Complaint in EEO No. 168-19 based solely on the July 2019 PDI and Letter of Warning.

Within this context, Mr. Herrington clearly failed to exhaust his administrative remedies over the new claims that he brings in Counts I (hostile work environment and disparate treatment) and Counts II (race-based retaliation by Mr. Beck in February 2019) of his Complaint before the Court. The fact that Mr. Herrington only checked the retaliation entry in Box 14 of his formal EEO Complaint in EEO No. 168-19 and left all of the other boxes blank is fatal to his claim that he exhausted any hostile work environment or disparate treatment claim in Count I. *See Devitt v. Potter*, 234 F. Supp. 2d 1034, 1039–40 (D.N.D. 2002), *aff'd sub nom. Carriere v. Potter*, 83 F. App'x 139 (8th Cir. 2003) (federal employee did not properly exhaust administrative remedies regarding sex, religion and disability discrimination claims by only checking "Retaliation" on the EEO complaint and leaving the

8

boxes for "Religion," "Sex" and "Disability" blank.); *see also Wesley v. DeJoy*, No. 18-cv-01587-RLW, Order, ECF No. 26, at 10 (E.D. Mo. Sept. 15, 2020) (Postal Service employee failed to exhaust his disability claim where he only checked "Retaliation (Specify Prior EEO Activity) in Box 14 of his EEO Complaint).

Further, Mr. Herrington is now trying to use Count II in his Complaint before the Court to substantively challenge his prior February 2019 EEO (EEO No. 59-19) on the merits by claiming that Mr. Beck engaged in rase-based retaliation during the "indentured servant" incident with Jasmine Harris (Harris). SOF at ¶ 62. However, as with his hostile work environment and disparate treatment claims, Mr. Herrington's entries in Box 14 in his formal EEO Complaint in EEO No. 168-19 belie such an interpretation. Specifically, Mr. Herrington did not raise any substantive challenge about the merits of his February 2019 EEO (EEO No. 59-19) in his formal EEO Complaint in EEO No. 168-19 that he filed on November 12, 2019. Instead, Mr. Herrington only cited to his February 2019 EEO (EEO No. 59-19) as the statutorily-protected conduct that served as the basis for his retaliation claim that he identified in Box 14 and articulated in his handwritten statement – to wit, the July 2019 PDI and Letter of Warning. SOF at ¶¶ 17, 20.

### 2. MR. HERRINGTON'S NEW CLAIMS ARE NOT LIKE OR REASONABLY RELATED TO HIS RETALIATION CLAIM OVER THE JULY 2019 PDI AND LETTER OF WARNING.

Finally, Mr. Herrington has no argument that his claims found in his Complaint before the Court are a logical extension of his retaliation claim based on the July 2019 PDI and Letter of Warning and, as such, that they are "like or reasonably related to the substance" of that retaliation charge. A party's retaliation claim is considered "separate and distinct" from claims based on other discriminatory grounds. *See Williams*, 21 F.3d at 223; *see also Richter*, 686 F.3d at 852-53 (recognizing that "retaliation claims are not reasonably related to underlying discrimination claims.") (quotation omitted). This is particularly the case where the party alleging discrimination expressly alleges a

retaliation claim in his EEO complaint by checking the "Retaliation" box and proffering specific facts for retaliation based on prior EEO activity – as here – but fails to check any other boxes for other types of discriminatory conduct. *See Williams*, 21 F.3d at 223 (*pro se* federal employee failed to exhaust her racial discrimination claim where she only checked the "Retaliation" box in her EEO complaint, thereby warranting summary judgment against her); *see also Wesley*, *supra*, at 10 (Postal Service employee's disability claim was not like or reasonably related to his retaliation claim).

The same conclusion holds true for any substantive challenge on the merits of Mr. Herrington's February 2019 EEO (EEO No. 59-19) in Count II. Mr. Herrington filed that EEO claim on February 6, 2019 through the EEO Contact Summary process and alleged race-based harassment and retaliation. SOF at ¶ 25. He indicated that his February 2019 EEO (EEO No. 59-19) was based on an incident with Ms. Harris that happened on January 2, 2019 over a statement he made to her about indentured servitude and that Mr. Beck accused him of being a racist. SOF at ¶¶ 26-28. Mr. Herrington subsequently signed an EEO Settlement Agreement in EEO No. 59-19 on May 14, 2019, in which he terminated his claim and voluntarily waived his rights to any further appeal over it through the EEO process. SOF at ¶¶ 30, 33-34. As described above, the allegations that he raised through the EEO Contact Summary and formal Complaint in EEO No. 168-19 and which were accepted as the specific issue by the Postal Service on December 9, 2019 are bereft of any claims about Ms. Harris, indentured servitude or Mr. Beck allegedly calling Mr. Herrington a racist. SOF at ¶¶ 7-8, 10-13, 15, 17, 20, 21. Simply put, there are no factual allegations in Mr. Herrington's formal EEO Complaint at EEO No. 168-19 about the July 2019 PDI and Letter of Warning to indicate that he was bringing a retaliation claim that was like or reasonably related to his race-based retaliation claim from February 2019 against Mr. Beck involving Ms. Harris and his indentured servitude comment. As such, the Court should grant summary judgment for the Postal Service.

**II.   MR. HERRINGTON'S ACTUAL RETALIATION CLAIM BEFORE THE COURT IN EEO NO. 168-19 FOR THE JULY 2019 PDI AND LETTER OF WARNING LEGALLY FAILS.**

As noted, Mr. Herrington only raised one retaliation claim in EEO No. 168-19 that is properly before this Court – to wit, that Mr. Beck gave him a PDI and issued him a Letter of Warning in July 2019 in retaliation for a prior EEO that Mr. Herrington filed against Mr. Beck in February 2019 (EEO No. 59-19). SOF at ¶¶ 15, 17, 20. The Court should grant summary judgment in Defendant's favor over this claim for three reasons: first, the Postal Service's PDI process is not an adverse employment action for retaliation purposes as a matter of law; second, Mr. Herrington cannot show a casual nexus; and third, Mr. Herrington admits that he suffered no material harm.

**A.   FRAMEWORK FOR RETALIATION CLAIMS.**

Title VII makes it unlawful for an employer to discriminate against an employee for engaging in a protected activity. *See* 42 U.S.C. §§ 2000e-3(a). The plaintiff has the burden to make a *prima facie* retaliation case. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). A retaliation claim can be made using direct evidence or with the *McDonnell Douglas* framework. *See Jackson v. UPS, Inc.*, 643 F.3d 1081, 1087-88 (8th Cir. 2011). To make a *prima facie* case, the plaintiff must show (1) that he engaged in a statutorily protected activity; (2) an adverse employment action was taken against him; and (3) that a causal connection exists between the first two elements. *See Green v. Franklin Nat. Bank of Minneapolis*, 489 F.3d 903, 914 (8th Cir. 2006). If he does so, the burden shifts to the employer to advance a legitimate, non-retaliatory reason. *See Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005). If it does, the burden then shifts back to the employee to show pretext. *Id.*

The causal connection requires the plaintiff to show that the employer had actual or constructive knowledge of his protected activity. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). The Eighth Circuit has also held that "[g]enerally, more than a temporal connection between the protected conduct and [the] adverse employment action is required to present a genuine

11

factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). To show a causal connection based on timing, the time between the employer's knowledge of the protected activity and the adverse action must be close. *See Clark County School District v. Breeden,* 532 U.S. 268, 273-74 (2001); *see also Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001). Hence, a longer gap between the protected activity and the alleged act "weakens an inference of retaliatory motive," *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005), and a significant delay "tends to evaporate" causation. *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005).

### B.   MR. HERRINGTON HAS NO RETALIATION CLAIM.

Mr. Herrington lists his prior February 2019 EEO against Mr. Beck (EEO No. 59-19) as the statutorily-protected basis for his retaliation claim in EEO No. 168-19 before the Court. SOF at ¶ 17.  In this regard, Defendant does not dispute that Mr. Herrington engaged in a statutorily protected activity in February 2019 EEO with EEO No. 59-19.  However, Mr. Herrington cannot make a *prima facie* case for retaliation in EEO No. 168-19 before the Court for three reasons.

#### 1.   THE POSTAL SERVICE PDI PROCESS IS NOT AN ADVERSE ACTION.

Mr. Herrington's retaliation claim in EEO No. 168-19 legally fails because the Postal Service PDI process is not an adverse action.  Mr. Herrington is clear that he cites the July 2019 PDI process and the subsequent Letter of Warning as the underlying basis for his retaliation claim in EEO No. 168-19.  SOF at ¶¶ 8-13, 15-20.  However, Courts have frequently held that the Postal Service's PDI process is not a materially adverse action for retaliation purposes. *See Franklin v. Potter*, 600 F. Supp. 2d 38, 68-69 (D.C. 2009) (PDI for poor attendance was not a materially adverse action); *see also McDaniel v. Potter*, Nos 06-cv-0803, 06-cv-1371, 2017 WL 3165807, at *8-9 (N.D. Ohio Oct. 26, 2007) ("USPS's action involving a pre-disciplinary interview regarding [Plaintiff's] behavior and reported failure to attend the required safety meeting was not a materially adverse change in the terms and conditions of his employment and, accordingly, did not rise to the level of an adverse employment

12

action."); *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) (Postal Service supervisor calling an employee into his office to discuss work issues and issuing a written reprimand did not rise to the level of an adverse action).

As the D.C. Circuit underscored, "[a]n employer should be entitled to discuss and even critique employees about legitimate job performance problems without being subjected to suit." *Franklin*, 660 F. Supp. 2d at 69. That is precisely what happened here. Postal Service policy barred photo-taking absent management authorization. SOF at ¶¶ 42, 71-72. Mr. Herrington violated this policy on July 1, 2019 when he took a picture of a colleague on her assigned route. SOF at ¶¶ 38-39, 76-77, 85. Mr. Beck conducted a PDI on July 3, 2019 over this incident and issued a Letter of Warning on July 15, 2019 reprimanding Mr. Herrington for his conduct. SOF at ¶¶ 44, 48. In the end, nothing came of the PDI process: Mr. Herrington filed a grievance which was resolved in his favor and the Letter of Warning was expunged and reduced to a job discussion. SOF at ¶¶ 53-54, 73. Further, Mr. Herrington admits that he suffered no material harm from the PDI, SOF at ¶¶ 51, 55, and Mr. Beck admits that he did not suspend Mr. Herrington, did not reduce his pay, did not do anything to his benefits, did not prevent him from serving as a shop steward and did not do anything that affected Mr. Herrington's work hours, his tour of duty or his position after conducting the PDI and issuing the Letter of Warning. SOF at ¶ 80. In this regard, Mr. Herrington's claim that the PDI process constitutes an adverse action for retaliation purposes legally fails. *See Morrison*, 363 F. Supp. 2d at 591 (postal employee failed to show an adverse employment action for retaliation purposes where she had a meeting with her supervisor to discuss work issues and received a written reprimand which was expunged after six months and not followed with any disciplinary action).

### 2. MR. HERRINGTON CANNOT SHOW A CAUSAL NEXUS.

Even if the PDI process legally constitutes an adverse action, Mr. Herrington cannot show a casual nexus between his protected activity in February 2019 and the July 2019 PDI and Letter of

Warning. Specifically, cases that accept temporal proximity between the statutorily-protected activity and an adverse action as evidence of retaliation causation "uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation omitted). Thus, the longer the gap between that knowledge and the adverse action "weakens an inference of retaliatory motive," *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005), and a significant delay "tends to evaporate" the nexus. *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005).

Here, Defendant does not dispute that Mr. Beck, who personally conducted the July 2019 PDI and issued the Letter of Warning, knew about Mr. Herrington's protected activity in EEO No. 59-19. SOF at ¶ 68. In this regard, Mr. Herrington can show that Mr. Beck had knowledge about his prior statutorily-protected activity when he conducted the July 2019 PDI and issued the Letter of Warning.[4] However, the timeframe between the two acts is too attenuated to show a causal connection for retaliation purposes. Specifically, Mr. Herrington engaged in his statutorily-protected activity on February 6, 2019, when he initiated EEO No. 59-19 against Mr. Beck. SOF at ¶¶ 24-25. Mr. Beck, however, did not engage in his alleged retaliatory conduct until some five months later, when he held the PDI on July 3, 2019 and issued the Letter of Warning on July 15, 2019. SOF at ¶¶ 44, 48. In this regard, five months between Mr. Herrington's protected activity in February 2019 (EEO No. 59-19) and the July 3rd PDI and July 15th Letter of Warning are simply too attenuated to create a casual nexus for retaliation purposes. *See Noyes v. Am. Tissue Servs. Found.*, 310 Fed. App'x 52, 53 (8th Cir.

---

[4] Ms. N. Johnson, however, had no knowledge about Mr. Herrington's prior EEO activity until July 3, 2019, when Mr. Herrington told her during the PDI about his prior EEO activity. SOF at ¶ 46. In other words, the decision to conduct a PDI had already been made before Ms. N. Johnson had any knowledge about Mr. Herrington's prior EEO activity. Further, Mr. Herrington has adduced no facts that she was responsible for the July 15th Letter of Warning. Instead, Mr. Beck admitted that he wrote the Letter of Warning based on his PDI notes. SOF at ¶¶ 76, 79. Similarly, Mr. Herrington claimed that Ms. Bailey knew about his prior EEO activity through an EEO representative. SOF at ¶ 47. However, during his deposition, Mr. Herrington admitted that he had no proof that an EEO representative told Ms. Bailey about his prior EEO activity but instead was speculating. *Id.* Speculation is insufficient for summary judgment. *See Howard v. Columbia Public School Dist. et al.*, 363 F.3d 797, 800 (8th Cir. 2004).

2009) (four to five months, without more, did not establish a causal connection); *see also Clark*, 532 U.S. at 273 (citing cases that three and four months was insufficient for causal proximity).

### 3. MR. HERRINGTON DID NOT SUFFER ANY MATERIAL HARM.

Finally, Mr. Herrington cannot make a *prima facie* case for retaliation because he cannot establish any material harm from the July 2019 PDI and Letter of Warning. Although the July 15th Letter of Warning indicated that Mr. Herrington could be suspended from work, see a reduction in grade or pay or removal from the Postal Service, SOF at ¶ 50, Mr. Herrington was not suspended after receiving it. SOF at ¶ 51. Instead, he challenged the Letter of Warning through the grievance process, which was resolved in his favor to a job discussion. SOF at ¶¶ 53-54. After the grievance, Mr. Herrington remained a city carrier and shop steward; he was not suspended from his job; and neither his position, tour, pay, nor benefits changed. SOF at ¶ 55. In fact, Mr. Herrington admits that after the Letter of Warning, his title, his pay, his benefits, his tour and his Sunday rotation did not change; and that he remained a shop steward and it did not affect his work schedule. SOF at ¶ 51; *see also* SOF at ¶ 6. In other words, Mr. Herrington can only show that he received a PDI on July 3rd and a Letter of Warning on July 15th that threatened potential disciplinary action (but did not amount to any material harm) and was ultimately reduced to a job discussion. Such facts are insufficient for retaliation. *See AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) (employer "sending critical letters that *threatened discipline* . . . did not establish a prima facie case of retaliation absent materially adverse consequences to the employee.") (emphasis added). Thus, his lack of harm vitiates his retaliation claim. *See Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (". . . retaliation cannot be trivial; it must produce some injury or harm.") (quotation omitted); *see also Harris v. Brennan*, No. 19-cv-00225-JCH, Order, ECF No. 56, at 11-12, 14, 15, 18, 21 (E.D. Mo. April 22, 2021) (Postal Service employee failed to make a retaliation claim where she admitted that alleged conduct did not cause any change in job title, benefits, pay or affect her work schedule).

15

Dated: September 6, 2022                           Respectfully submitted by,

                                              SAYLER FLEMING
                                              United States Attorney

                                              */s/ Regan Hildebrand*
                                              REGAN HILDEBRAND
                                              Assistant United States Attorney
                                              Thomas F. Eagleton U.S. Courthouse
                                              111 South Tenth Street, 20th Floor
                                              St. Louis, Missouri 63102
                                              Phone: (314) 539-7703
                                              Fax: (314) 539-2287
                                              E-mail: Regan.Hildebrand@usdoj.gov
                                              Bar No. 6326374 (IL)
                                              Bar No. 57438 (MO)

                                              *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document to all attorneys of record via the Court's CM/ECF electronic notification system on September 6, 2022.

                                              */s/ Regan Hildebrand*
                                              REGAN HILDEBRAND
                                              Assistant United States Attorney