# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LYLE HERRINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:21-cv-00761-SEP |
| ) | |
| LOUIS DEJOY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This case involves an employment dispute between Plaintiff Lyle Herrington and his former employer, the United States Postal Service, based on events that occurred in 2019. Plaintiff filed a formal Equal Employment Opportunity (EEO) complaint in November 2019, asserting that he had been subjected to disciplinary action in retaliation for an earlier EEO claim he filed in February 2019.  He then filed this lawsuit against Defendant Louis DeJoy, bringing claims for hostile work environment, disparate treatment based on race, and retaliation under Title VII of the Civil Rights Act of 1964.  *See* Doc. [1].  Defendant now moves for summary judgment, Doc. [18], arguing:  (1) that Plaintiff did not properly exhaust his claims other than retaliation by filing the February 2019 EEO claim; and (2) that Plaintiff failed to make a prima facie case for his retaliation claim even though it was properly exhausted.  The motion is fully briefed and ripe for review.  For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND[1]

Plaintiff worked as a letter carrier for the United States Postal Service at its branch in Creve Coeur, Missouri.  Doc. [20] ¶ 1.  On February 6, 2019, Plaintiff filed an Equal Employment Opportunity claim in EEO No. 59-19 (February EEO claim).  *Id.* ¶¶ 24-25.  At the time, Plaintiff had three immediate supervisors:  Melvin Beck, Nikki Johnson, and Sharita

---

[1] The facts are drawn from Defendant's Statement of Uncontroverted Material Facts.  *See* Doc. [20].  The Court deems admitted each of Defendant's proffered material facts, as Plaintiff either admits Defendant's facts or offers nonresponsive argument and recharacterization of them.  That practice violates this Court's local rules, which require either an admission or denial of each fact.  *See* E.D. Mo. L.R. 4.01(E); *see also Echols v. Courier Express One, Inc.*, 2022 WL 5241810, at *2 (E.D. Mo. Oct. 6, 2022) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007))).

Johnson.  *Id.* ¶ 3.  He named Beck as the responsible management official in the claim.  *Id.* ¶ 25.  For the "Claim Type," Plaintiff listed "Harassment-Non-Sexual" and for the "Summary of Issue," he listed "retaliation."  Doc. [20-11] at 3.  Specifically, Plaintiff claimed that his co-worker, Jasmine Harris, made a "false allegation" that Plaintiff "made racial remarks against her" on January 2, 2019.  Doc. [20-10] at 4; Doc. [20] ¶ 27.  According to Plaintiff, Harris had complained to him that she was "worked like a slave."  Doc. [20] ¶ 27.  Plaintiff responded that her job was "the next best thing to indentured servitude" because her position did not pay the same rate as a letter-carrier, despite the similar workload.  *Id.*  When Plaintiff encountered Beck later that day, Beck accused him of being a racist and told him to apologize to everyone openly on the floor.  *Id.*  After that encounter, Beck did not discipline Plaintiff for his statement to Harris or conduct a pre-disciplinary interview (PDI).  *Id.* ¶ 28.  Plaintiff did not receive a Letter of Warning, nor did he see any change to his position, route, pay, or benefits.  *Id.* ¶¶ 28-29.

On May 14, 2019, Mr. Herrington signed an EEO Settlement Agreement regarding the February EEO claim.  *Id.* ¶ 30; Doc. [20-12].  The agreement stated:  "I fully understand that by agreeing to this resolution I waive my rights to any further appeal of my complaint through the EEO process.  I further state that this agreement did not result from harassment, threats, coercion or intimidation."  Doc. [20-12] at 1.  Plaintiff indicated that he voluntarily signed the Agreement and agreed to give up all allegations in the February EEO claim; no one forced or coerced him to do so.  Doc. [20] ¶ 34.  The agreement further stated that if "the Postal Service has failed to adhere to the stipulations contained in this agreement for any reason not attributable to my acts or conduct, [Plaintiff] must notify the Manager, EEO Compliance and Appeals, located in [his] region, in writing within 30 calendar days of the alleged non-compliance."  Doc. [20-12] at 1.  Plaintiff did not notify any individual or entity of non-compliance with the EEO Settlement Agreement.  Doc. [20] ¶ 36.

On July 1, 2019, Plaintiff was working his normal route when he saw another Postal Service truck parked at a dead end.  Doc. [20] ¶ 38.  He took a picture of the vehicle because there had been several instances of mail theft and employees had just attended a talk about mail theft.  *Id.*  The driver of that truck, LaWanda Johnson (L. Johnson), took offense at Plaintiff's photo-taking, and Plaintiff subsequently deleted the photograph.  *Id.* ¶ 39.  She then took a picture of him.  *Id.*  According to Plaintiff, postal service employees were instructed not to take

photographs, with a few exceptions: they were permitted to photograph faulty equipment, misbehavior, and accidents. *Id.* ¶ 42.

On July 3, 2019, Beck conducted a PDI with Plaintiff over the photo-taking incident with L. Johnson. *Id.* ¶ 44. Less than two weeks later, Beck issued Plaintiff a Letter of Warning for harassment and failure to follow instructions over the photo-taking incident. *Id.* ¶ 48; *see* Doc. [20-13]. The letter noted that Plaintiff had failed to follow instructions "not to take photos of letters, parcels, postal equipment, employees performing any duties they were instructed to do, or of the managerial staff" and that his actions "resulted in an employee feeling harassed, embarrassed, and intimidated while in the performance of her duties." Doc. [20-5] at 1; Doc. [20] ¶ 48. The letter also stated that "future deficiencies will result in more severe disciplinary action being taken against you," which could include "suspensions, reduction in grade or pay, or removal from the Postal Service." Doc. [20-5] at 2; Doc. [20] ¶ 50. Plaintiff admitted that his position, route, pay, and benefits did not change because of that letter, nor did it affect his shift that day. *Id.* ¶¶ 51, 55. On July 23, 2019, Plaintiff filed a grievance over the Letter of Warning, which was resolved in his favor. *Id.* ¶ 54; Doc. [20-8]. The Letter of Warning was reduced to a "job discussion." Doc. [20] ¶ 54; Doc. [20-8].

On August 7, 2019, Plaintiff initiated a new EEO claim in EEO No. 168-19, again naming Beck as the responsible management official. Doc. [27]. Under "Claim Type," he listed "Disciplinary Action – Reprimand (Letter of Warning)" and provided an "Incident Date: 07/05/2019." *Id.* at 4. He also provided the following summary of the issue:

> Mr. Beck gave me a letter of warning for taking a picture of a suspicious postal vehicle on my route. The vehicle then pulled up to me and took my picture of me personally. Mr. Beck issued a LOW [Letter of Warning] to me but didn't issue any to the other individual. This person was black and Mr. Beck is claiming that I'm harassing her. Mr. Beck did nothing to the other person. This is in reprisal to a past EEO that was filed on 02/06/2019[.]

*Id.* at 5. Alongside that claim, Plaintiff submitted three other EEO claims against other managers and supervisors, which the Postal Service consolidated under his open case number, EEO No. 168-19. Doc. [20] ¶¶ 10-13.

Plaintiff filed a formal EEO complaint in that case number on November 12, 2019. Doc. [20] ¶ 15; Doc. [20-4]. He listed Beck, N. Johnson, and Bailey as the purported discriminators. The complaint form prompted Plaintiff to check what "Type of Discrimination You Are

3

Alleging." Doc. [20-4] at 1. He checked only "Retaliation (Specify Protected Activity)" and did not specify the statutorily protected activity. *Id.* He was also asked to specify the actions resulting in the alleged discrimination. *Id.* In a handwritten statement attached to the complaint, he stated that he had experienced "retaliation for an EEO [he] filed against M. Beck back in Feb[ruary] 2019." *Id.* at 6.

On December 9, 2019, the Postal Service sent Plaintiff an Acceptance for Investigation letter regarding the formal complaint, acknowledging receipt and describing the scope of its investigation as follows: "<u>Specific Issue Alleged</u>: You alleged discrimination based on Retaliation (Prior EEO Activity) when: On July 15, 2019, you were issued a Letter of Warning (LOW)." Doc. [20-6] at 2. The letter also provided that if Plaintiff did "not agree with the <u>accepted</u> issue(s) as defined above, [he] must provide a written response specifying the nature of [his] disagreement within seven (7) calendar days" of the date of receipt. *Id.* Plaintiff did not respond to the letter. Doc. [20] ¶ 23.

On June 23, 2021, Plaintiff filed this action against Defendant under Title VII of the Civil Rights Act of 1964. *See* Doc. [1]. In Count I, he alleges that he was subject to a hostile work environment and disparate treatment based on race. *Id.* ¶¶ 26-39. In Count II, Plaintiff repeats the allegations set forth in his February 2019 EEO claim, *id.* ¶¶ 40-49, and claims that he was retaliated against for filing that claim, *id.* ¶¶ 50-52.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present

4

specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

## DISCUSSION

**I.     Plaintiff exhausted only his retaliation claim based on the formal EEO complaint.**

Defendant argues that Plaintiff's claims in Count I (hostile work environment and disparate treatment on account of race) and Count II (claims based on the merits of his February 2019 EEO claim), along with allegations he raises common to both counts, are not "properly before this Court because he failed to exhaust them in his formal EEO Complaint . . . that he filed on November 12, 2019." Doc. [19] at 3. According to Defendant, the November formal EEO complaint shows that "he was only bringing a retaliation claim for the July 2019 pre-disciplinary interview and Letter of Warning based on his prior February 2019 EEO." *Id.* at 6. Thus, only the claim based on the formal complaint, Defendant argues, is properly before this Court. *Id.* at 4. The Court agrees.

"A postal employee must exhaust applicable administrative remedies before commencing a Title VII action in federal court." *Patrick v. Henderson*, 255 F.3d 914, 915 (8th Cir. 2001) (citing *Bailey v. U.S. Postal Serv.*, 208 F.3d 652, 654 (8th Cir. 2000)). "In other words, an employee cannot bring a discrimination claim without first exhausting his or her administrative remedies." *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999). "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Id.* at 572 (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994)). "[C]laims are deemed to be like or reasonably related when they 'could reasonably be expected to grow out of the charge of discrimination.'" *Stutts v. Potter*, 2005 WL 1959104, at *2 (E.D. Mo. Aug. 9, 2005) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)).

Neither Plaintiff's claims in Count I nor the portion of Count II relating to the events that gave rise to his February EEO claim are "like or reasonably related to" his retaliation claim in

5

Count II—i.e., that he was subjected to retaliation because he filed the February EEO claim—which is the only claim raised in his November formal EEO complaint.  The formal complaint says nothing about hostile work environment, disparate treatment based on race, race-based retaliation, or other misconduct.  *See* Doc. [20-4].  Plaintiff checked only the box indicating "Retaliation (Specify Prior EEO Activity)." *Id.* at 1.  The fact that he did not exhaust his administrative remedies as to the claims in Counts I and II (other than retaliation) is fatal to those claims.  *See Russell v. TG Missouri Corp.*, 340 F.3d 735, 747-48 (8th Cir. 2003) ("While [plaintiff] did check the box for, and allege, a claim of disability discrimination, she cannot rely on that claim to show that she exhausted her administrative remedies with respect to her retaliation claim because 'it is well established that retaliation claims are not reasonably related to underlying discrimination claims.'" (quoting *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998))); *see also Wesley v. DeJoy*, 2020 WL 5534926, at *5 (E.D. Mo. Sept. 15, 2020) (summary judgment for Postal Service appropriate on employee's disability discrimination claim because he checked only the box for "Retaliation (Specify Prior EEO Activity)" and therefore did not exhaust his administrative remedies).

       Plaintiff's handwritten statement attached to the complaint further illuminates the basis of the retaliation claim:  In it, he claims to have been retaliated against for "an EEO [he] filed against M. Beck in Feb[ruary] 2019."  Doc. [20-4] at 6.  The handwritten statement does not mention any other claim.  In addition, Plaintiff was afforded an opportunity to challenge the scope of the Postal Service's investigation in response to his formal complaint.  *See* Doc. [20-6].  The Postal Service specifically described the scope of investigation as follows:  "Specific Issue Alleged:  You alleged discrimination based on Retaliation (Prior EEO Activity) when:  On July 15, 2019, you were issued a Letter of Warning[.]" *Id.* at 2.  Plaintiff could have objected to that description but declined to do so.  Doc. [20] ¶ 23.

       Plaintiff contends that, "[a]lthough he only checked the box for retaliation, the Court [can] consider the race discrimination and theories of hostile environment and disparate treatment" because he included those allegations in his February 2019 EEO claim, which he claims was consolidated with his formal EEO complaint from November 2019.  Doc. [24] at 3.  That argument fails for two reasons.  First, Plaintiff makes no colorable argument that his other claims are like or reasonably related to his retaliation claim.  *See* Doc. [24] at 5-6 (claiming,

6

without citation to anything in the actual record,[2] that he "alleged discrimination on the basis of race . . . and referenced harassing behavior in his administrative complaint," and further claiming, without any legal or factual support that, because he "mentioned" his prior EEO Complaint, he "described disparate treatment, race discrimination, harassment, and retaliation despite only checking the box labeled 'retaliation'"); *see also Russell v. TG Mo. Corp.*, 340 F.3d 735, 747-48 ("[I]t is well established that retaliation claims are *not* reasonably related to underlying discrimination claims." (emphasis added)).

Second, it is undisputed that Plaintiff settled his February 2019 EEO claim and agreed to release those claims. *See* Doc. [20-12]. That undisputed fact contradicts Plaintiff's unsupported claim that the February 2019 and November 2019 EEO complaints were consolidated for the purpose of joint investigation. Per the EEO Settlement Agreement signed in May 2019, Plaintiff voluntarily agreed to "waive [his] rights to any further appeal of [his] complaint through the EEO process." *Id.* at 1. Neither party disputes that the settlement agreement is enforceable. Plaintiff cites no evidence to support a genuine dispute about whether his earlier claim was settled, or to support his claim that the two claims were consolidated.[3] Doc. [24] at 2-3. Accordingly, Plaintiff has created no genuine dispute as to whether he has exhausted the hostile work environment and race-based disparate treatment claims he asserts in Count I or the claims

---

[2] The Court's efforts to find an "Exhibit A," or any other attachment that Plaintiff's citations could plausibly refer to, were unsuccessful. *See* Doc. [24] at 5-6. Plaintiff's counsel is admonished to take greater care to ensure accuracy and clarity when citing the record, and to include the location of cited documents on the Court's docket. It is not the Court's duty to scour the record to find evidence supporting Plaintiff's assertions. *See Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record]." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

[3] The only document Plaintiff cites in support of the claim that his two EEO complaints were "consolidated" is a letter from August 16, 2019, in which the Postal Service acknowledges the receipt of multiple recent contacts from Plaintiff providing additional allegations relating to the reprisal he allegedly suffered on July 15, 2019. *See* Doc. [24] at 2-3. That letter notifies Plaintiff that the additional allegations will be consolidated with the case Plaintiff opened on August 7, 2019, which culminated in his formal complaint on November 12, 2019. *See* Doc. [20-1] at 2 (providing chronology for case number 4J-630-0168-19). Nothing in the letter refers to the EEO complaint Plaintiff filed in February 2019, which had a different case number and was based on different allegations. Thus, Plaintiff's citation of that letter as evidence that the claims in his February 2019 complaint were "consolidated" into the November 2019 complaint is misleading at best. Plaintiff's only other putative "evidence" for the claim is Plaintiff's assent to leading questions from his counsel at his deposition. Doc. [20-14] at 165:3-10.

in Count II based on the substance of his February 2019 EEO complaint. Defendant is entitled to summary judgment on those claims.

## II. Plaintiff's retaliation claim fails because he has not shown that he suffered a materially adverse employment action that was caused by his protected activity.

Defendant concedes that Plaintiff properly raised "one retaliation claim in EEO No. 168-19," based on his November 2019 Formal EEO Complaint. Doc. [19] at 11. According to Defendant, that claim states "that Mr. Beck gave him a PDI and issued him a Letter of Warning in July 2019 in retaliation for a prior EEO that Mr. Herrington filed against Mr. Beck in February 2019 (EEO No. 59-19)." *Id.* Defendant contends that Plaintiff has not met his burden of making a prima facie retaliation case under Title VII because "the Postal Service's PDI process is not an adverse employment action for retaliation purposes as a matter of law." *Id.* And even if it were, Defendant argues, Plaintiff "cannot show a causal nexus" between filing the February 2019 EEO and the alleged retaliatory action. *Id.* Plaintiff responds that he has "established a prima facie case of retaliation" and that the "[r]etaliatory actions" taken against him were "material" and "significant, as Defendant engaged in extreme, systemic retaliatory conduct resulting in serious employment consequences." Doc. [24] at 7-8. The Court disagrees and finds that Plaintiff has not made a prima facie case for retaliation.

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "To defeat summary judgment on a retaliation claim, a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted). Because Plaintiff does not cite direct evidence of retaliation, the Court analyzes his Title VII claims under the traditional burden-shifting framework. Under that framework, "an employee has the initial burden of establishing a prima facie case of retaliation by showing that (1) he engaged in protected conduct, (2) he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077-78 (8th Cir. 2010)).

8

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015). "An employer should be entitled to discuss and even critique employees about legitimate job performance problems without being subjected to suit." *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) (no finding of adverse employment action where postal service worker was called into supervisor's office to discuss work issues and issued written reprimand).

Plaintiff here has not shown that he suffered any "tangible change in working conditions that produces a material employment disadvantage." *Wagner*, 779 F.3d at 766. His EEO complaint notes the PDI on July 3, 2019, and the Letter of Warning on July 15, 2019, reprimanding Plaintiff for violating the Postal Service's policy against photo-taking claims. Doc. [20-4]. His briefing claims that he was "constantly harassed from the moment he walked into work, until the time he left" and that the harassment "affected his home life," such that he "did not want to go to work." Doc. [24] at 8. But "subjective feelings" about a change in professional circumstances, including "embarrassment and humiliation," "do not transform [it] into an adverse employment action . . . ." *Morrison*, 363 F. Supp. 2d at 591. And Plaintiff points to no material change in professional circumstances he suffered as a result of the PDI or Letter of Warning.[4] *See* Doc. [20] ¶¶ 51, 55. In fact, he concedes that a grievance he filed regarding the Letter of Warning was resolved in his favor. *See id.* ¶¶ 53-54; Doc. [20-9] at 1. Because Plaintiff has not provided any evidence that he suffered a materially adverse

---

[4] In his deposition testimony, Plaintiff claimed he was not allowed to take leave without pay after he received the Letter of Warning. *See* Doc. [20-14] at 110:4-14. Plaintiff admits that he was allowed to take leave with pay, but that "when [he] needed [leave] later on, it was not there for [him] to take" because he didn't have enough leave with pay available, and he claims he was prohibited from taking leave *without* pay. *Id.* at 110:19-25, 111:1-2. But Plaintiff could not recall the specific timeframe when he was ran out of paid leave. *Id.* at 111:1-6. And his only evidence that the denial of leave constituted retaliation is the fact that the denial occurred after he received the Letter of Warning. That testimony does not establish "an adverse employment action." *See Hardeman v. United States*, 682 F. Supp. 2d 947, 954 (E.D. Ark. 2010) (denial of sick leave and referral to the Office of Professional Responsibility are not adverse employment actions under Title VII) ("[Plaintiff] makes no allegation that these actions resulted in a material change of his employment status, salary, or benefits."); *see also Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886 (8th Cir. 2005) (placement on administrative leave pending a disciplinary investigation during term of employment were not adverse employment actions where the officer maintained the same pay, grade, and benefits).

9

employment action, he has not made a prima facie case for retaliation. *See, e.g.*, *Franklin v. Potter*, 600 F. Supp. 2d 38, 68-69 (D.D.C. 2009) (plaintiff's PDI for poor attendance "was not a materially adverse action" as required for prima facie retaliation claim).

Moreover, even if Plaintiff had shown that he suffered an adverse employment action, his retaliation claim would still fail because he has produced no evidence that the July 2019 PDI and Letter of Warning were causally linked to his protected conduct in February 2019. "More than a temporal connection between an employee's protected conduct and the adverse employment action is required to create a genuine factual issue on causation, particularly when the time interval is not very close." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005) (internal citations and quotation omitted); *see also id.* ("A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive." (citing *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999))). Five months separate Plaintiff's February 2019 EEO and the July 2019 PDI and Letter of Warning. That time interval does not, by itself, support an inference of causation. *See, e.g.*, *Dhyne.*, 184 F.3d at 989 (four-month gap between adverse action and protected conduct weakened inference of retaliation); *Noyes v. Am. Tissue Servs. Found.*, 310 F. App'x 52, 53 (8th Cir. 2009) (four to five months between protected activity and adverse action did not support inference of causation). And Plaintiff has produced nothing else to support the "[m]ore than a temporal connection" that is necessary to create a genuine factual issue as to causation. *Hesse*, 394 F.3d at 633.

Because Plaintiff has failed to make a prima facie case for retaliation, Defendant is entitled to summary judgment as to that claim as well.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [18], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count I of Plaintiff's Complaint, Doc. [9], is **DENIED as moot**.

A separate Judgment accompanies this Memorandum and Order.

Dated this 13th day of March, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE